[No. 29920. *En Banc.* February 14, 1947.]

KATHERINE G. SMALL, *Individually and as Administratrix, Respondent,* v. EDNA SMALL BARTYZEL, *Appellant.*[1]

[1]Reported in 177 P. (2d) 391.

*Irving D. Smith,* for appellant.

*Wright, Booth & Beresford,* for respondent.

SIMPSON, J.—This action was instituted by Katherine G. Small, individually and as administratrix of the estate of her deceased husband, Clarence A. Small, to recover the proceeds of a group insurance policy upon the life of Clarence A. Small. In her complaint, the plaintiff asked the court to apportion the insurance between the parties in the amount each should be entitled to receive. The answer admitted the receipt of the three thousand dollars insurance and alleged that the equities were in defendant's (Edna Small Bartyzel's) favor. In addition, the answer contained an allegation that plaintiff was estopped from claiming any portion of the three thousand dollars. The reply put in issue the allegations contained in the answer.

At the conclusion of the trial, the court made findings of fact and conclusions of law and entered a judgment favorable to plaintiff, as administratrix of her husband's estate, in the sum of $2,566.09.

Defendant has appealed. The assignments of error, twenty in number, call in question the findings and conclusions of the trial court and the decree entered by it.

The undisputed facts are as follows: Clarence A. Small was a locomotive engineer, employed by the Northern Pacific Railway Company, and lived in Seattle, Washington. Many years ago, he was married to Mabel G. Smith, but they were divorced in 1928. The appellant, Edna Small Bartyzel, was their only child. January 18, 1938, Clarence A. Small and the respondent, Katherine G. Small, were married and remained husband and wife until his death August 21, 1944.

Prior to his marriage to respondent, Clarence A. Small was insured in the Aetna Life Insurance Company of Hartford, Connecticut. That company had issued policies of group insurance to the Northern Pacific Railway Company upon the lives of its employees. Two policies were originally issued in 1924. Group policy No. 2360 was for five hundred dollars, and group policy No. 2360-S was for three thousand dollars. Both policies lapsed, and the last one named was replaced by insurance in the sum of three thousand dollars under policy No. 7093. The insurance policies had no loan value, cash surrender value, or paid-up insurance value, as is ordinarily true of a life insurance policy. The premiums on the policy were paid by Small at the rate of $2.70 per month, and, at the time of his death, he had paid a total of $440.66. When he received the certificate, he designated appellant as the beneficiary.

Mr. Small married the respondent a little less than thirteen months after he had received the certificate of insurance. Ninety-two monthly payments were made upon this certificate, seventy-nine of which were made after his second marriage from funds he earned as a locomotive engineer. After Mr. Small's death, appellant made proof of death, and received three thousand dollars from the insurance company. The trial court ruled that appellant was entitled to receive 13/92nds and respondent 79/92nds of the three thousand dollars which had been paid to appellant.

The question in this case is whether, when an unmarried man secures a policy of life insurance, designates a beneficiary, pays a few months' premiums on the policy, gets married, and thereafter pays premiums from the community earnings, the proceeds of the policy should be divided between the named beneficiary and the deceased's estate.

Appellant takes the position that the contract issued in 1924 was continuous until the date of his death, and that the beneficiary named in the policy became the absolute owner of the proceeds of that policy. Many authorities have been cited by counsel for appellant to support his

contention. We have read the cases cited by counsel and realize that they have a bearing upon the issues presented here. However, we do not deem it necessary to discuss them in this opinion, for the reason that the question before us has been fully discussed, analyzed, and decided by this court in *Occidental Life Ins. Co. v. Powers,* 192 Wash. 475, 74 P. (2d) 27, 114 A. L. R. 531, in which case this court was called upon to decide whether a married man could name his mother and secretary as beneficiaries in a life insurance policy paid for with community funds. We held that he could not do so and, in deciding the questions, considered numerous cases, including several which had been decided by this court.

The rule laid down in the above-cited case was followed in *In re Coffey's Estate,* 195 Wash. 379, 81 P. (2d) 283, and, in passing upon the question presented, the court quoted from the *Powers* case as follows:

" 'In this state, insurance or the proceeds of insurance are not mere expectancies or choses in action, but are property; and if the premiums are paid by the assets of the community, they constitute community property.' "

The reason for the rule as announced by the *Powers* case was amplified in *In re Towey's Estate,* 22 Wn. (2d) 212, 155 P. (2d) 273, where it is said:

"In *Occidental Life Ins. Co. v. Powers, supra,* we held that 'insurance, or the proceeds of insurance are not mere expectancies, or choses in action, but are property,' and if the insurance premiums are paid with assets of the community they constitute community property; that is, the wife has a vested property right in all of the community property equal to that of her husband, and neither spouse may, without consent of the other, make gifts of the community property even to his or her own relatives. The husband may not, as statutory agent or manager of the marital community, change the beneficiary of the insurance policy from his spouse to another person and thereby make a gift of community property to anyone against the consent of his wife."

The holding that the proceeds of the husband's life insurance policy in cases where the premiums are paid from

community funds, belong to the community, is clearly apparent from the very nature of the community property system. That system, adopted by legislative action many years since, provides that all property, with certain exceptions not pertinent here, acquired after marriage by either husband or wife, or both, is community property. Our community property system conclusively determines that everything that is produced by either spouse, whether it be by toil or talent, is earned by the community and belongs to the community. It is true that the husband is the manager of the community property, but as such he acts as trustee for the community and cannot use community property of any kind for any purpose except for the good of the community.

After a second marriage, Mr. Small earned the sums of money which were used to pay the premiums on the insurance policy. That money belonged to the community consisting of himself and Katherine G. Small. It follows that the insurance paid for by community funds was the property of the community, and that Mrs. Small was entitled to recover that property as an asset of her deceased husband's estate.

Appellant has suggested that respondent was estopped to recover. We have considered the question, but do not feel that there are any of the elements of estoppel in this case. It is quite true that Mr. Small paid the insurance installments after his second marriage from his earnings, and it may have been with the knowledge of his wife, but that in itself would not estop her from maintaining this action. Especially is that true when she maintains the action on behalf of the estate of her deceased husband.

We find no error in the record and therefore affirm the judgment.

MILLARD, STEINERT, ROBINSON, JEFFERS, SCHWELLENBACH, and ABEL, JJ., concur.

MALLERY, C. J. (dissenting)—The landmark case upon which the majority decision purports to be based is *Occidental Life Ins. Co. v. Powers,* 192 Wash. 475, 74 P. (2d)

27. In that case, Mr. Powers took out a five-thousand-dollar endowment policy of life insurance, in which his wife was named as the sole beneficiary. The premiums were all paid out of community funds. Later, he excluded his wife by designating two new beneficiaries; namely, his mother and his secretary. The endowment did not accrue during his lifetime, nor did he take its cash surrender value. After his death, his wife successfully brought an action to recover the full amount of the avails of the insurance. The court held that, by reason of the surrender value and endowment features of the policy, it was community property as distinguished from a mere expectancy. The evil the opinion was aiming at is expressed in the following quotation from it:

" 'It is common knowledge that in many families a large portion of community savings are invested in various forms and types of insurance. If a husband could secretly substitute another beneficiary for his wife, she could be left penniless.' "

It invoked the rule that the husband is statutory manager of the community property but has no power to give it away, since it must be devoted to the uses of the community. Upon that premise, it then concluded that the husband had no power to name anyone as beneficiary of his insurance other than his wife, because to do so would be giving away community assets.

However laudable may have been the desire of the court to prevent the husband from leaving the wife penniless, it should have treated the community property consisting of insurance just as the law treats all other kinds of community property, because there is no basis for a legal distinction between them. It should have recognized the right of each spouse to provide for the disposal of one half of the community property after the termination of the community, rather than to have invoked a rule not applicable to the situation. Had it done so, the wife would have received one half of the avails of the insurance as her share just the same as in the case of any other community property, for the reason that, since it belonged to her, the

husband had no right to dispose of it. Thus, as provided by our community property system, she would not have been "left penniless."

It frequently happens that a widower with dependent children remarries, takes out insurance for their benefit, and thereafter dies during their dependency. The rule of the *Powers* case prevents one from doing this even to the amount of one half the proceeds and hence created a greater evil than the one it attempted to correct.

Happily, the recent case of *In re Towey's Estate,* 22 Wn. (2d) 212, 155 P. (2d) 273, in overruling the *Powers* case *sub silencio,* conformed to our basic community property system and thereby corrected both evils. In the *Towey* case, the husband changed the beneficiary of four insurance policies from the wife to his executor in trust for a minor son. This court gave effect to that change to the extent of one half of the proceeds, upon the theory that one half belonged to the wife as her share of the community property, the other half therefore was subject to the husband's disposition.

The rule that a husband cannot give away community property is a good rule, but it should not be misapplied. It has no bearing whatever on the situations here involved.

The *non sequitur* in the *Powers* case, of course, lies in the failure to confine the rule invoked to its time limit of existence, that is, during the continuance of the community.

Perhaps it may be thought that the *Powers* case has a different basis than that which I have stated because of certain *obiter dicta* to be found in the opinion, for it was there said (1) that insurance is property, (2) that the only way a deceased person may dispose of property is by will, and (3) a policy of insurance is not a will. From this it might be inferred that the avails of life insurance are legally never payable to anyone but an executor or administrator (as in the *Towey* case), and that the basis of the decision was that the husband died intestate as to the insurance and hence the wife, being the sole heir, was entitled to all the proceeds. That such was not the basis of the opinion is

obvious, for this is not the law, and cannot become the law unless this court holds to be unconstitutional Rem. Rev. Stat. (Sup.), § 7230-2 [P.P.C. § 666-43], which provides:

"The person or persons designated in any life insurance policy . . . as being entitled to receive any payment thereunder, shall be entitled to receive such payment and give full acquittance therefor, and such payment shall fully discharge the insurance company from all claims under such policy. . . ."

This clearly gives the deceased the power to dispose of the avails of insurance without a will.

I cannot subscribe to the legal reasoning that differentiates between the right of a husband to dispose of one half of the avails of insurance from his right to dispose of one half of other kinds of community property, when it is put upon the premise that, in the case of insurance, because the act of designating a beneficiary is done at a time when the community is in existence, it falls under the ban of the rule that a husband cannot give away community property. I think the time element refers to the time the act takes effect and not to the time when it is done. If this be not so, then the act of making a will falls under the same ban, since a will cannot be made after death and hence must be made during the existence of the community.

The death of a spouse dissolves the community and automatically terminates the agency and the application of the rule. Thereafter, the disposition of the property is not made under the guise of a continuing statutory managership, but upon the basis of the property rights of those concerned. Otherwise, under the rule as applied in the opinion, all community property must invariably go to the surviving spouse. This is not the law. The right of a spouse to will his or her interest in the community property is predicated upon the termination of the statutory managership upon the death of a spouse and also upon the power, during the existence of the community, to make provision for the disposition of his or her share of the community property, to take effect after its dissolution. That being

so, it follows that the *Towey* case did not follow the rule of the *Powers* case, but gave effect to the change of bene-ficiary to the executor, not because he was executor as distinguished from an individual, but because the wife's community share of the proceeds of the policies consisted of one half thereof, and hence his right of disposal ran only to the other half. This was pointed out by this language:

"If, as argued by counsel for respondent, there could be no change of beneficiary without the consent of the wife—the position is untenable—it would follow that the policies of insurance were not community property in which the husband had an equal interest with his wife, but that the policies of insurance on the life of a husband payable to the wife were the separate property of the wife, although purchased with funds of the community."

In the *Powers* case, the beneficiary was changed over to individuals, whereas, in the *Towey* case, the change was made to an executor. This is the only difference, and it is immaterial. These cases are based on different rules. The *Powers* case goes off on the theory that, as manager, the husband cannot give away one half of the community assets, even though the community will no longer exist as of the time the disposition is to become effective. The *Towey* case invokes the rule that, while a husband cannot dispose of his wife's part of the community property, he has the right to dispose of his part as of the time the community is dissolved. Being indistinguishable on the facts, these cases are irreconcilable. The *Towey* case necessarily overrules the *Powers* case.

It is significant that the rule of the *Powers* case has never been applied to any type of community property other than insurance.

The rule should be, and under the *Towey* case is, that a spouse can designate a person, other than the surviving spouse, as beneficiary up to the amount of one half of all of his or her community life insurance, because it is property the same as any other. The statutes specifically give the right to designate beneficiaries of insurance and puts that designation on a par with the laws governing wills

as a legal method of disposing of property after death. To the extent that one exceeds this right by encroaching on the property rights of the surviving spouse, he or she should be protected; but within the limit of the right, effect should be given to the designation of another as beneficiary.

The policy in question in the case at bar was one of term insurance, which had no surrender value and was payable upon the happening of the contingency insured against, that is to say, the death of the insured. It was an expectancy only, and, under its particular terms, which will not be set forth here, it amounted to no more than a monthly renewal of a policy of term insurance. The full value for all the monthly premiums except the last one was received by way of the protection enjoyed by the assured during the periods for which they were paid, there being no surrender value or other obligation remaining on the part of the insurance company.

It may be pointed out that the policy in question was more than term insurance—it was group term insurance with level premiums based on the average age of the groups, so that the insured of all ages in the group paid the same level premium. In other words, the deceased enjoyed no premium advantage by reason of the length of time he had paid premiums. They would have been the same had he taken out the insurance the same month in which he died. Hence, no premium has any significance except the last premium, which was paid during coverture, and for this reason the avails of the policy are community property.

The deceased's daughter was designated beneficiary, and to the extent that the deceased had the right to make such designation, that is, up to one half of the avails, effect should be given to his designation. The wife should receive the other half in her own right, independent of any designation, simply because it belongs to her as her share of the community property.

I dissent.